IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

v.

            Case No. 19-00171-CR-W-GAF

MIA LEE JAMISON,

            Defendant.

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, William A. Alford III and Patrick D. Daly, Assistant United States Attorneys, and the defendant, Mia Lee Jamison ("the defendant"), represented by Martin D. Warhurst.

The defendant understands and agrees that this plea agreement is only between her and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Counts Two and Three of the Indictment. Count Two charges the defendant with a violation of 18 U.S.C. §§ 844(i) and 373, that is, solicitation to commit a crime of violence – specifically, to maliciously destroy by arson a building. Defendant further agrees to and hereby does plead guilty

to Count Three of the Indictment charging her with a violation of 18 U.S.C. § 1001(a)(2), that is, making a false official material statement to investigators of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. By entering into this plea agreement, the defendant admits that she knowingly committed these offenses, and is in fact guilty of these offenses.

    **3.**   **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which she is pleading guilty are as follows:

> During approximately the last week of March 2019, a confidential informant, hereinafter referred to as the "C/I," reported to law enforcement official that that he/she met with Mia Lee Jamison, the defendant, at her residence located at 6413 North Park Avenue, Gladstone, Missouri. The C/I stated that during that meeting, the defendant indicated she was interested in hiring an individual to destroy a building by fire. The C/I reported that the defendant identified the building as "Mia's Plaza." The C/I reported that the C/I told the defendant that the C/I was not interested in burning her building, but the C/I stated that the C/I knew someone who would be willing to burn down the building. The C/I reported that the defendant offered to pay the C/I a $1,000 finder's fee if the C/I could find an individual who would destroy the building.

> After the C/I met with the defendant, the C/I contacted his law enforcement handler and was ultimately connected to federal agents for the Bureau of Alcohol, Tobacco, Firearms & Tobacco – the federal agency that typically investigates arson cases.

> On April 23, 2019, the C /I and an ATF Special Agent, acting in an undercover capacity, hereinafter referred to as the "U/C," met with the defendant at her residence located at 6413 North Park Avenue, Gladstone, Missouri. During the meeting, the defendant told the ATF U/C that she owned a building that she wanted to be destroyed. The defendant told the U/C stated she was going to be losing ownership of the building known as Mia's Plaza. This building is located at several addresses including 1726, 1722, 1716, and 1714 West 39th Street, Kansas City, Missouri, within the Western District of Missouri. The defendant also told the U/C that she had a $1,500,000 insurance policy on the building.

> During the meeting with the U/C on April 23, 2019, the defendant discussed destroying Mia's Plaza by fire. The defendant asked the U/C if he/she had ever failed at burning buildings. The defendant also asked the U/C if he/she would be able to destroy all of the building. During the conversation, the U/C asked the defendant if she wanted the fire to look like an accident. The defendant indicated she wanted the fire to appear to look like an accident. At the defendant's request, the U/C agreed to set the fire between the hours of 3:00 a.m. and 5:00 a.m., in an effort to limit the risk to the tenants who were more likely to be in the building during business hours. During this initial meeting, the defendant

2

asked the U/C on multiple occasions whether the U/C was recording their conversation. In truth, the U/C was using a cellular smart phone to record the conversation.

At the conclusion of the meeting on April 23, 2019, the U/C informed the defendant that the fee to burn her building would be ten percent of the $1,500,000 insurance payout or $150,000 cash. The defendant agreed to pay this fee for burning down the building located at 1726, 1722, 1716, and 1714 West 39th Street, Kansas City, Missouri. The defendant stated that once she received the insurance payment from the destruction of the building that she would pay the U/C the sum of $150,000. The U/C told the defendant he/she would need an initial down payment and the defendant initially agreed to pay the U/C/ a down payment of $5,000.

On April 24, 2019, the same U/C met the defendant again at the defendant's residence located in Gladstone, Missouri. The U/C agreed to drive the defendant to her bank and then later to Mia's Plaza. The defendant directed the U/C to her bank which was the U.S. Bank, located at 6098 Northeast Antioch Road, Kansas City, Missouri. The defendant entered the bank and she returned to the U/C's vehicle. The defendant then directed the U/C to Mia's Plaza located near the intersection of West 39th Street and Bell Avenue in Kansas City, Missouri. While the U/C and the defendant drove around the commercial building that the defendant indicated she wanted destroyed, the defendant then told the U/C she wanted him/her to burn the entire smaller building and to only partially burn or damage the attached larger building so she could potentially remodel the larger building. The U/C informed the defendant that he/she could not guarantee that he/she could minimize the damage to the larger portion of the building due to the uncontrollability of the fire, but the U/C would do his/her best to satisfy the defendant's request. After the defendant and the U/C completed their reconnaissance of the building, the U/C drove the defendant back to her residence. While at the defendant's residence, the defendant paid the U/C a sum of $3,500 in cash as a partial down payment to commit the destruction of Mia's Plaza by arson. The defendant reported to the U/C that she only had $3,500. At the conclusion of the meeting, the defendant and the U/C agreed to meet one more time on April 30, 2019, before the U/C would burn Mia's Plaza as the defendant requested. The interaction between the defendant and the U/C were recorded by the U/C using a clandestine recording device.

Below are three photographs of the building that the defendant asked the U/C to destroy by intentionally setting a fire. Investigators captured the below photographs on April 28, 2019. The first and second photographs depict the west side of the building that encompasses the addresses 1726 through 1722 West 39th Street and is the smaller portion of the building that the defendant indicated to the U/C that she wanted to ensure would be totally destroyed by the fire. The third photograph depicts the east side of the building that encompasses the addresses 1716 through 1714 West 39th Street and is the side of the building that the defendant indicated she hoped the U/C could only partially burn or damage.

3



Bob Wasabi Kitchen
1726 West 39th Street, Kansas City, Missouri 64111



World of Spirits
1722 West 39th Street, Kansas City, Missouri 64111

4



Vacant Occupancy
1716 West 39th Street, Kansas City, Missouri 64111

Sahara Sheesha Lounge
1714 West 39th Street, Kansas City, Missouri 64111

During the afternoon of April 26, 2019, the defendant contacted the U/C and informed him/her that she would need her building burned before Monday, April 29, 2019, because the defendant recently discovered she would no longer own the building after that day due to an ongoing civil lawsuit. The defendant indicated during her conversation with the U/C that she would be willing to pay the U/C more money than what the defendant and the U/C had originally agreed because she was accelerating the date to destroy the building. At the conclusion of the conversation, the defendant and the U/C agreed to meet on April 28, 2019.

On April 28, 2019, the U/C met with the defendant for a final time at her residence in Gladstone, Missouri. During the final meeting, the U/C informed the defendant that the U/C had examined the building the defendant wanted the U/C to destroy by fire. The U/C indicated that while inspecting the building he/she also looked at the roof of the building. The U/C indicated that after inspecting the building the U/C was ready to burn the building that night if the defendant still wanted the U/C to proceed with the arson. The defendant told the U/C that she wanted him to follow through with the previous arrangement to burn her building. The U/C told the defendant that because of the weather forecast for rain it may be more difficult for the U/C to control the fire once the U/C initiated it because the U/C would have to compensate for the structure being wet to ensure it would burn. The U/C told the defendant that this factor would more than likely lead to the destruction of her entire building instead of only destroying a portion of the structure as the defendant had previously requested. The defendant acknowledged she was okay with the entire building burning down if that is ultimately what occurred once the fire was set.

As the U/C and the defendant discussed burning her building, the defendant told the U/C that she had gone to her building to remove the video surveillance cameras in preparation for the fire. The defendant indicated that she removed the video surveillance cameras on her own accord since the last meeting with the U/C. The defendant also again confirmed that she would pay the U/C $150,000 for burning her building after she received her insurance payment, which was part of her claimed $1,500,000 insurance policy. The defendant and the U/C also discussed how the defendant would pay the U/C. The defendant indicated she would pay the U/C by either making several $8,000 dollar cash payments or by writing checks to the U/C's contracting company so the payments appeared as though they were for work being done on the defendant's house and not as payment for the arson.

A review of the Jackson County, Missouri Property Tax Database for the commercial building located at 1726 West 39th Street in Kansas City, Missouri, revealed the property was owned by K & K INC. The property tax database also revealed the commercial property the defendant intended to have burned encompassed the addresses of 1726, 1722, 1716, and 1714 West 39th Street, Kansas City, Missouri 64111.

A review of the Missouri Secretary of State database revealed that K & K INC's registered agent was listed as Mia Jamison with an address of 6413 North Park Avenue, Gladstone, Missouri 64118, which was the defendant's residence.

On April 28, 2019, investigators visually confirmed a wine, liquor, and grocery store doing business as "39th World of Spirits" which is depicted in the second photograph in this factual basis, was open and operating as a commercial business. Investigators also confirmed that the wine, liquor, and grocery store located at this address was selling many goods that had previously crossed state lines when they arrived at the store to be sold. Investigators also confirmed that the liquor store sold items to customers who used credit cards and debit cards that transferred money that crossed state lines through wire transmissions.

A hookah lounge doing business as "Sahara Sheesha Lounge" was also operating at the building the defendant indicated to the U/C that she wanted to destroy by fire. The Sahara Sheesha Lounge is depicted in the third photograph contained within this factual basis and is located at 1714 West 39th Street, Kansas City, Missouri. This hookah lounge was located on the East side of the building and was observed by investigators to be open and operating on April 28, 2019. This business sold flavored tobacco and beverages to its patrons and some of these items previously crossed state lines prior to arriving at the store to be sold to customers.

A restaurant doing business as "Bob Wasabi Kitchen" was also operating at the building the defendant indicated to the U/C that she wanted to destroy by fire. The restaurant is depicted in the first photograph contained within this factual basis and is located at 1726 West 39th Street, Kansas City, Missouri. Investigators confirmed that this restaurant purchased food that was previously transported across state lines into the State of Missouri.

6

Specifically, this restaurant was a sushi restaurant that sold ocean fish that necessarily had to be transported in interstate commerce to be sold to patrons of the restaurant. The customers also frequently paid for meals by utilizing credit cards and debit cards that transferred money via wire transmissions that crossed state lines.

Law enforcement recorded all of the meetings between the defendant and the U/C by either audio or video recording equipment, or both.

On April 29, 2019, at approximately 4:00 a.m., investigators made contact with Mia Jamison at her residence in Gladstone, Missouri, to conduct a ruse interview related to her solicited request to intentionally destroy by fire the building known as Mia's Plaza. During the meeting, the defendant acknowledged she was the owner of the building located on West 39th Street that contained a sushi restaurant and a liquor store. The defendant stated that she owned the building through K & K INC. Investigators initially told the defendant that the larger (East) portion of her building had been completely destroyed by a fire and the smaller (West) portion that contained the business investigators identified as "Bob's Wasabi Kitchen," and the "39th World of Spirits" was only partially damaged. The defendant verbally indicated she was shocked to hear that her building had been damaged by fire.

During the interview, which was audio recorded, the defendant stated she had owned the building since 1985 or 1986. The defendant also indicated that the smaller (West) section of her building where Bob's Wasabi Kitchen and the liquor store was located was newer and had been rebuilt after the original building located in the same location had been destroyed by a fire in 1990. A Kansas City Star news article published on November 7, 1990, corroborated this report by the defendant.

The defendant told investigators that she had a $2,000,000 dollar insurance policy on the building and provided a copy of the insurance policy she retrieved for investigators during the interview. A review of the insurance policy for K & K, INC., policy number 2AA137247, had an effective date of June 21, 2018, and was underwritten by White, Grego & White Insurance located at 10034 N. Ambassador Drive, Kansas City, Missouri, and was bound by Evanston Insurance Company/M J Kelly. The policy limit for building coverages was listed as $1,600,000 and covered the building located at 1714, 1716, 1722, 1724, and 1726 West 39th Street, Kansas City, Missouri. The general aggregate limit of the insurance coverage was $2,000,000. Later, investigators obtained a copy of the insurance policy directly from the insurance provider and the insurance information was consistent with the policy provided to investigators by the defendant.

The defendant reported that her situation related to the building was complicated as she was currently involved in a civil suit related to the rent.

Toward the end of the ruse interview, investigators asked whether she burned down the building in question or whether she asked someone to burn the building down. On multiple occasions the defendant denied requesting or hiring someone to destroy the

building by fire. The investigators who made these inquiries worked for the Bureau of Alcohol Tobacco, Firearms & Explosives which is a federal agency of the United States. That agency investigates numerous offenses to include attempts to maliciously destroy property by fire. During this interview, the investigators were attempting to attain evidence establishing whether the defendant had committed a federal offense. In other words, their interview of the defendant was within a matter that as agents of a federal agency they were investigating. The defendant's statement that she did not hire anyone to set the building located at 1726, 1722, 1716, and 1714 West 39th Street, Kansas City, Missouri on fire was totally false, as the defendant well knew, as the defendant had paid $3,500 to a U/C to burn that building down. The defendant's false statement was capable of influencing the federal investigator's investigation of this case.

After the defendant's denials of being involved a plan to commit arson, investigators told the defendant that her building had not actually been damaged by a fire and the building was still standing. Investigators then arrested the defendant.

Defendant admits that, between on or about April 23, 2019 and April 28, 2019, in the Western District of Missouri, with the intent that another person, who was an undercover Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, she did engage in conduct constituting a felony that has an element the attempted use of physical force against the property of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, did solicit, command, induce and endeavor to persuade the undercover Special Agent to engage in such conduct, that is to maliciously destroy by arson the building, commercial businesses, and the property contained therein, located at a structure commonly referred to as Mia's Plaza located at several addresses including 1726, 1722, 1716, and 1714 West 39th Street, Kansas City, Missouri, in violation of Title 18, United States Code, Section 844(i), all in violation of Title 18, United States Code, Section 373.

Defendant further admits that, on or about April 29, 2019, in or about Gladstone, Missouri, within the Western District of Missouri, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, she did knowingly and willfully made and caused to be made false, fictitious, and fraudulent material statements and representations, in that the defendant stated and represented to federal investigators of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, a federal agency that investigates suspected instances of arson and attempted arson, specifically that she did not hire someone to set the building located at 1726, 1722, 1716, and 1714 West 39th Street, Kansas City, Missouri on fire, or words to that effect. These statements and representations were completely false, as the defendant well knew, because the defendant had provided $3,500 to an undercover Special Agent for the purpose of having that person destroy by fire the building and its contents found at that same location, all in violation of Title 18, United States Code, Section 1001(a)(2).

By entering into this plea agreement, the defendant admits that she knowingly committed these offenses charged in Counts Two and Three, and she is in fact guilty of these offenses.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining her guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which she is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon her plea of guilty to Count Two of the Indictment charging her with a violation of 18 U.S.C. §§ 844(i) and 373, that is, solicitation to commit a crime of violence – specifically, to maliciously destroy by arson a building. The maximum penalty the Court may impose is for a conviction to Count Two is not more than ten (10) years of imprisonment, a $125,000 fine, three years of supervised release, an order of restitution and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

The defendant understands that upon her plea of guilty to Count Three of the Indictment charging her with a violation of 18 U.S.C. § 1001(a)(2), that is, making a false official material statement to investigators of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The maximum penalty the Court may impose is for a conviction to Count Two is not more than five

9

(5) years of imprisonment, a $250,000 fine, three years of supervised release, an order of restitution and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class D felony.

   **6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    d. if the defendant violates a condition of her supervised release, the Court may revoke her supervised release and impose an additional period of imprisonment of up to two years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f. any sentence of imprisonment imposed by the Court will not allow for parole;

    g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h. the defendant may not withdraw her guilty plea solely because of the nature or length of the sentence imposed by the Court.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the defendant attempting to maliciously destroy property by fire, specifically a building located at several addresses including 1726, 1722, 1716, and 1714 West 39th Street, Kansas City, Missouri, for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Count One at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives her right to challenge the initiation of the dismissed or additional charges against her if she breaches this agreement. The defendant expressly waives her right to assert a statute of limitations defense if the dismissed or additional charges are initiated against her following a breach of this agreement. The defendant

11

further understands and agrees that if the Government elects to file additional charges against her following her breach of this plea agreement, she will not be allowed to withdraw her guilty plea.

**8.** **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of her criminal activities. The defendant understands these disclosures are not limited to the counts to which she has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9.**   **Withdrawal of Plea.**   Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court.   In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible.   However, after the plea has been formally accepted by the Court, the defendant may withdraw her pleas of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.   The defendant understands that if the Court accepts her plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, she will not be permitted to withdraw her plea of guilty.

**10.**   **Agreed Guidelines Applications.**   With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a.   The Sentencing Guidelines do not bind the Court and are advisory in nature.   The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

   b.   The parties agree that they believe the applicable Guidelines section for Count Two is U.S.S.G. § 2K1.4(a)(4), which provides for a base offense level of 2 plus the offense level from U.S.S.G. § 2B1.1;

   c.   The parties agree that the base offense level under U.S.S.G. § 2B1.1(a)(2) is an offense level of 6;

   d.   The parties agree there is an offense level enhancement under U.S.S.G. § 2B1.1(b)(1) of at least 14, and no more than 16, based on the intended fraud loss being more than $550,000 and less than $3,500,000 – the defendant may object to any enhancement over 14 for the application of U.S.S.G. § 2B1.1(b)(1) and the Government will not argue that the intended fraud loss was more than $3,500,000.

   e.   The parties reserve their rights to advocate for or object to the 2-level enhancement under U.S.S.G. § 2B1.1(b)(16) for the offense potentially involving a conscious or reckless risk of death or serious bodily injury;

13

f. The parties agree that the applicable Guidelines section for Count Three is U.S.S.G. § 2J1.2, which provides for a base offense level of 14;

g. The defendant has admitted her guilt and clearly accepted responsibility for her actions, and has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, she is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and her pretrial release; or (2) attempts to withdraw her guilty pleas, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility;

h. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine her applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

i. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw her plea of guilty;

j. The United States may seek an upward departure or an upward variance from the Guidelines range deemed applicable by the Court. The defendant may seek a downward departure or a downward variance from the Guidelines range deemed applicable by the Court, to include recommending a sentence of probation. This agreement by the parties is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

k. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment. The

defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay;

l.    The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that she will make during her plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11.    Effect of Non-Agreement on Guidelines Applications.**    The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections.    As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12.    Change in Guidelines Prior to Sentencing.**    The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option.    If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13.    Government's Reservation of Rights.**    The defendant understands that the United States expressly reserves the right in this case to:

a.    oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

b.    comment on the evidence supporting the charges in the Indictment;

c.    oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

15

   d. oppose any post-conviction motions for reduction of sentence, or other relief.

  **14.**  <u>**Waiver of Constitutional Rights**</u>.  The defendant, by pleading guilty, acknowledges that she has been advised of, understands, and knowingly and voluntarily waives the following rights:

   a. the right to plead not guilty and to persist in a plea of not guilty;

   b. the right to be presumed innocent until her guilt has been established beyond a reasonable doubt at trial;

   c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

   d. the right to confront and cross-examine the witnesses who testify against her;

   e. the right to compel or subpoena witnesses to appear on her behalf; and

   f. the right to remain silent at trial, in which case her silence may not be used against her.

  The defendant understands that by pleading guilty, she waives or gives up those rights and that there will be no trial.  The defendant further understands that if she pleads guilty, the Court may ask her questions about the offense or offenses to which she pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making a false statement.  The defendant also understands she has pleaded guilty to a felony offense and, as a result, will lose her right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. <u>Waiver of Appellate and Post-Conviction Rights.</u>

    a.   The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement she waives her right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

    b.   The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16.**   **Financial Obligations.**   By entering into this plea agreement, the defendant represents that she understands and agrees to the following financial obligations:

    a.   The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity.

    b.   The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

    c.   The defendant will fully and truthfully disclose all assets and property in which she has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

    d.   Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States

makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to her to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of her fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that she has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that she will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

j. The defendant states that she is the sole and rightful owner of $3,500 she paid to the U/C and that to the best of her knowledge no one else has any ownership or other interest in the property. The defendant hereby abandons any interest she has in such property and consents to the destruction or any other disposition of the property by the federal, state or local agency without further notice or obligation whatsoever owing to the defendant. To memorialize the defendant's abandonment of the $3,500 she paid to the U/C, pursuant to this plea

agreement and prior to sentencing in this case, the defendant must sign and execute a Consent to Forfeiture or Destruction of Property and Waiver of Notice, Investigation Number 779020-19-0040, regarding $3,500 in U.S. currency, ATF E-Form 3400.1 (Revised May 2013). To properly execute this form, she must execute it while being witnessed by a Special Agent from the Bureau of Alcohol, Tobacco, Firearms & Explosives.

17. **Waiver of FOIA Request.** The defendant waives all of her rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of her claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw her plea of guilty.

The defendant also understands and agrees that in the event she violates this plea agreement, all statements made by her to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by her before a grand jury or any tribunal or any leads

19

from such statements or testimony shall be admissible against her in any and all criminal proceedings. The defendant waives any rights that she might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by her subsequent to this plea agreement.

**20. Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, her attorneys or any other party to induce her to enter her plea of guilty.

**21. No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22. Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether

or not that party was involved in drafting or modifying this agreement.

23. **Government Will Move to Remand Defendant Into Custody At The Plea.** The defendant understands that one of the crimes to which she is pleading, that is, 18 U.S.C. §§ 844(i) and 373 (solicitation to commit a crime of violence), is a crime of violence as prescribed in 18 U.S.C. §§ 3142(f)(1) and 3143(a). Accordingly, the Government believes that pursuant to 18 U.S.C. § 3143(a)(2), the Court must detain the defendant after she pleads guilty to the offense and will so move at the conclusion of the hearing.

Teresa A. Moore
United States Attorney

Dated: 6/2/2022

William A. Alford III
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 6/2/22

Mia Lee Jamison
Defendant

I am Mia Lee Jamison's attorney. I have fully explained to her her rights with respect to the offenses charged in the Indictment. Further, I have reviewed with her the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with her. To my knowledge, Mia Lee Jamison's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 6/2/22

Martin D. Warhurst
Attorney for Defendant

21